UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-14376-Cannon/McCabe

JARY WATSON,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

**THIS MATTER** comes before the Court by Order of Reference from United States District Judge Aileen M. Cannon (DE 4) for a Report and Recommendation on the parties' cross-motions for summary judgment (DE 18, DE 19).  The cross-motions present three issues for review:

- whether the Administrative Law Judge ("ALJ") violated Plaintiff's due process rights by failing to conduct a de novo hearing as ordered,

- whether the ALJ erred in determining that Plaintiff could perform his "past relevant work" as a middle school teacher, and

- whether the ALJ properly evaluated the medical opinion evidence.

For the reasons set forth below, the undersigned **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**.

I.  **PROCEDURAL HISTORY**

On August 26, 2020, Plaintiff filed an application for disability benefits, with an alleged disability onset date of August 17, 2020 (R. 10).[1] After the application was denied at the lower levels, Plaintiff requested an administrative hearing, which took place via telephone on July 13, 2021 (R. 158). Following the hearing, the ALJ issued an unfavorable decision on August 30, 2021 (R. 10, 158-68). Thereafter, the Social Security Administration ("SSA") Appeals Council vacated the ALJ's decision and remanded the case, ordering the ALJ to conduct another hearing for the following reasons:

> The hearing recording is inaudible. All evidence upon which the [ALJ] relies for the decision must be contained in the record, including a verbatim recording of all testimony offered at the hearing (20 CFR 404.951(b)). An audit of the hearing recording shows that only the hearing reporter's introduction was recorded and the rest of the hearing is inaudible. The Appeals Council is unable to assess whether the decision is supported by substantial evidence because the hearing recording is incomplete. Upon remand the [ALJ] will: offer [Plaintiff] another opportunity for hearing and ensure an audible recording is made of the proceeding (20 CFR 404.951(b)).

(R. 175).

On remand, the ALJ conducted another telephonic hearing on May 5, 2022 (R. 54-107). Following this second hearing, the ALJ issued another unfavorable decision on June 29, 2022 (R. 10-30). The ALJ's decision followed the five-step process set forth in 20 C.F.R. §§ 404.1520(a)(4)(i-v) and 416.920(a)(4)(i-v). *See Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 852 (11th Cir. 2018) (explaining how the ALJ engages in the five-step process). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 17, 2020, the alleged onset date of disability (R. 13). At step two, the ALJ determined that Plaintiff had the following severe impairments: erythromelalgia, status-post anterior cervical discectomy

---

[1] The record on appeal can be found at docket entry 7.

and fusion at C5-C6, C6-C7, cervical spine radiculopathy at C5, chronic pain syndrome, and obesity (R. 13). The ALJ also determined that Plaintiff had the following nonsevere impairments: bilateral foot osteoarthritis and major depressive disorder (R. 14).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 18). Next, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b), with the following exceptions:

> [Plaintiff] can frequently handle with the left upper extremity. [Plaintiff] is able to push and pull without limitation. [Plaintiff] can frequently climb ladders, and scaffolds. [Plaintiff] can perform all other postural activities continuously.

(R. 19).

At step four, the ALJ determined that Plaintiff can still perform his past relevant work as a "Middle School Teacher" as generally performed (R. 28). The ALJ noted that the Dictionary of Occupational Titles ("DOT") did not specify a classification for "Middle School Teacher," but the ALJ relied on the testimony of the vocation expert ("VE") that the classification for "Elementary School Teacher," #092.227-010, required the same skill, knowledge, training, job requirements and exertional level as Plaintiff's past job (R. 28).

In addition, at step five, the ALJ found that other jobs exist in significant numbers in the national economy that Plaintiff can still perform, considering his age, education, work experience, and RFC (R. 29). Specifically, the ALJ found Plaintiff can still perform the duties of Tutor, DOT #099.227-034 (R. 29). As a result, the ALJ found Plaintiff not disabled (R. 29-30).

Following the ALJ's decision, on September 14, 2022, Plaintiff once again sought review from the SSA Appeals Council, which was denied (R. 1). This appeal followed pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (cleaned up). A reviewing court must regard the Commissioner's findings of fact as conclusive so long as they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence is … more than a scintilla … and it must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

A reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (cleaned up). So long as substantial evidence supports the Commissioner's decision, and the Commissioner followed proper legal standards, this Court must affirm, even if the Court would have reached a contrary result as finder of fact, and even if the Court finds that the evidence preponderates against the Commissioner's decision. *Winschel*, 631 F.3d at 1178.

## III. DISCUSSION

Plaintiff urges the Court to reverse the ALJ's decision for three reasons, each of which the Court will address in turn.

### A. Due Process Violation

Plaintiff first argues the ALJ violated his due process rights by failing to conduct a de novo hearing as ordered by the SSA Appeals Council (DE 18 at 3). Specifically, on or about February 1, 2022, the SSA Appeals Council vacated the results of Plaintiff's first administrative hearing after discovering the recording was inaudible, making it impossible to review the decision (R. 175). The SSA Appeals Council therefore remanded the case and ordered the ALJ to "offer [Plaintiff] another opportunity for hearing and ensure an audible recording is made of the

proceeding" (R. 175).  Plaintiff argues the ALJ violated this directive by failing to offer a new hearing, but instead relying upon her notes from the first hearing, which notes never became part of the record (DE 18 at 3-7).

The Court finds no error.  The record shows the ALJ at first believed she needed to re-create the record from the first hearing, perhaps using her previous notes as an aid to do so. Plaintiff's counsel, who had not attended the first hearing, made clear that she wished to present new and different testimony and that she wished to challenge findings made at the first hearing, including the DOT classification of Plaintiff's past relevant work, arguing:

> ATTY:  I did want to clarify, because … I wasn't privy to the previous hearing, and I did review your Decision and I wanted to clarify that [Plaintiff's] employment and the grade he taught and the appropriate DOT Code, because I believe there's two different DOTs and that might change whether or not he is capable of performing his past work.  …  I just wanted you to know where I was going with that….

(R. 60).

In response, the ALJ initially resisted the notion that she should entertain the possibility of changing the DOT classification made at the first hearing, reasoning:

> I don't think this is a situation where we are going to just create new stuff because the danger is there's already been sworn testimony in one respect, if that makes any sense.
>
> …
>
> [B]ut I think where I kind of get concerned is if the record is showing some things that are specifically based on the testimony; that we ought to be very careful about changing those parts of the record.
>
> …
>
> I'm very wary about changing a job when we already had testimony about that.

(R. 61, 63-64).

The ALJ drew a distinction between the DOT classification for past relevant work and Plaintiff's ongoing medical condition, which the ALJ regarded as "fluid" and subject to change:

> I think that's a different matter than we're talking about with the medical. To me the medical is a different thing because that's fluid….
>
> …
>
> It can change.... I now have more medical evidence that I might not have had at the time. Then I have more evidence about what has happened since the last time. But then there are certain things that I think aren't fluid, the job being that it should be what it is. It should be what it was testified to at the time of the hearing.

(R. 64).

Plaintiff's counsel responded by continuing to insist that she be allowed to introduce new evidence and make new arguments about the DOT classification made at the previous hearing, which she viewed to be erroneous. Plaintiff's counsel argued (correctly) that, unless she were permitted to do so, the SSA Appeals Council would still be left with no record to review the DOT classification:

> My concern is … that … the prior work was classified improperly and there's no way for us to review the record to make that determination because there was no audible recording. So there's no way for me to … rebut[] it [or] to appeal, to the Appeals Council … [because] … there is no evidence, recorded evidence, for us with regards to his testimony as to how he performs that job and how the [VE] decided that it was more clearly aligned with an elementary ed versus a secondary ed. So I feel like by us agreeing to that, … we're waiving his right to appeal that issue.

(R. 64-65).

This argument convinced the ALJ to change her mind, and the ALJ thereafter placed no restraints on Plaintiff's ability to present new testimony or argument, finding:

> Let's do this. Let's go ahead and cover the [prior work] testimony you want…. [W]e'll just proceed that way. Go ahead.

(R. 65). The ALJ clarified that, contrary to her initial inclination, she had decided to "start over":

> And I'll let … you know, … I'm not going to give you any parameters on … the testimony because … we're recreating a record, *so we have to start over*…. So let's continue.

(R. 66) (emphasis added).

The ALJ then allowed Plaintiff's counsel to develop a full record regarding Plaintiff's past relevant work, and the ALJ considered testimony from a new VE, different than the one who testified at the first hearing (R. 95-106). The ALJ likewise posed hypothetical questions to the new VE based on testimony developed at the current hearing, not based on testimony from the prior hearing (R. 98, 104-05). At the conclusion of the hearing, the ALJ decided upon a DOT classification for Plaintiff's past relevant work different than the one reached during the prior hearing. *Compare* R. 167 (finding a DOT classification of 099.227-010, schoolteacher) *with* R. 28 (finding a DOT classification of 092.227-010, elementary school teacher).

In sum, the record does not support Plaintiff's argument that the ALJ relied upon her notes from the first hearing to decide this case. To be sure, the ALJ initially considered the role that her notes should play, but the ALJ ultimately agreed with Plaintiff's counsel that she had to "start over" (R. 66). To that end, the ALJ considered new testimony and reached a new decision regarding the DOT classification for Plaintiff's past relevant work (albeit still not the decision Plaintiff wanted). The Court finds that the ALJ properly followed the instructions given by the SSA Appeals Council and that the ALJ had no obligation to make her notes part of the record in the current case. For these reasons, the Court finds no due process violation.

### B.     Past Relevant Work

Plaintiff next argues the ALJ committed reversible error by finding that Plaintiff can still perform his past relevant work as a middle school teacher. Plaintiff assigns error on two grounds, each of which the Court will address in turn.

### 1. Composite Job

Plaintiff first argues his past job qualified as a "composite job," defined as jobs that have "significant elements of two or more occupations and, as such, have no counterpart in the DOT." SSR 82-61 (1982), 1982 WL 31387, at *2. Specifically, Plaintiff argues his past job required significant duties as both a middle school teacher *and* as an athletic coach, and that the ALJ therefore erred by using the DOT classification solely for middle school teacher (DE 18 at 8). Instead, Plaintiff argues the ALJ should have compared his RFC to a composite job that included the added duties of an athletic coach. *See, e.g.*, *Parker v. Berryhill*, No. 1:16-3852, 2017 WL 4075128, at *12 (D.S.C. Aug. 24, 2017), *R. & R. adopted*, 2017 WL 4037680 (D.S.C. Sept. 13, 2017) ("Because the record suggests Plaintiff performed jobs as a coach and a teacher in combination, the ALJ erred in determining Plaintiff could perform [past relevant work] as a teacher without considering whether the job of teacher was performed as part of composite job.").

The Court finds no error because the record does not support a finding of composite job in this case. As stated, a composite job is one that has "significant elements" of two or more occupations. SSR 82-61 (1982), 1982 WL 31387, at *2. Put another way, a claimant's past relevant work qualifies as a composite job only "if it takes multiple DOT occupations to locate the main duties of the [past relevant work] as described by the claimant." *Program Operations Manual System* DI 25005.020; *see also Smith v. Comm'r Soc. Sec.*, 743 F. App'x 951, 954 (11th Cir. 2018) ("[T]o establish that his position was a composite job, [claimant] had to prove that hanging rent notices was one of the 'main duties' of his position with the property management company.").

Here, the record does not show that Plaintiff's past job as a middle school teacher involved "significant elements" or "main duties" as an athletic coach. Instead, Plaintiff testified that he "helped" with coaching sports and that he was paid separately for these services – an indication it

8

was not part of his main job duties (R. 88, 97). Likewise, Plaintiff testified that at some point during his time on the job, he stopped coaching in an official capacity – a further indication it was not part of his main job duties since he continued his work as a middle school teacher without being an athletic coach (R. 88).

The Court has considered, but finds unpersuasive, Plaintiff's citation to *Parker*, 2017 WL 4075128, at *12. In *Parker* a former school Athletic Director argued that the ALJ in his case erred by failing to recognize his past relevant work had been a composite job that included significant elements as both a school teacher and athletic coach. *Id.* The *Parker* court agreed based on the record evidence regarding the claimant's past job duties in that case. *Id.* Unlike *Parker*, the record here does not support a finding of a composite job.

In sum, the record fully supported the ALJ's decision to compare Plaintiff's RFC to the job duties of a middle school teacher rather than to a composite job that included added duties of an athletic coach. The Court finds no error.

### 2.     Mild Mental Limitations

Next, Plaintiff argues the ALJ committed error by finding that Plaintiff can still perform his past relevant work even though he suffers from "mild" limitations in the four broad areas of mental functioning (DE 18 at 13). Plaintiff assigns error on two fronts: (i) the ALJ committed procedural error by failing to explain, in her written decision, how Plaintiff can still perform his old job despite his mental limitations; and (ii) the ALJ committed substantive error by reaching an unsupported factual conclusion, namely, that Plaintiff can still perform his old job. The Court will address each argument in turn.

#### (i)     Procedural Error

To support his first argument, Plaintiff relies on *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268-69 (11th Cir. 2019), a case involving a former car salesman who suffered from bipolar

disorder. As in this case, the ALJ in *Schink* found, at step two of the sequential evaluation, that the claimant had no more than "mild" limitations in the four broad areas of mental functioning and that his mental impairments therefore qualified as "nonsevere." *Id.* Continuing with the sequential evaluation, the ALJ stated that he had "considered all symptoms" in formulating the claimant's RFC, as required by 20 C.F.R. § 404.1545(a). *Id.* The ALJ then concluded that, despite these symptoms, the claimant could nevertheless perform his past relevant work as a car salesman. *Id.*

When the case made its way to appeal, the Eleventh Circuit found error, among other reasons, due to the manner in which the ALJ explained his decision. Specifically, the *Schink* court faulted the ALJ's written decision for failing to explain *how* the claimant could return to his old job as a car salesman despite his mental limitations, reasoning:

> Here, although the ALJ stated he "considered all symptoms" when assessing Schink's RFC, the content of his decision demonstrates he did not. Nearly the entire section of the ALJ's opinion relating to RFC discusses Schink's physical impairments…. In fact, the ALJ's ultimate conclusions as to RFC do not include even a single finding about Schink's mental capacities. Instead, the ALJ's findings concern Schink's physical capacities exclusively.

*Id.* The Eleventh Circuit therefore reversed. *Id.*

Plaintiff argues the ALJ's decision here suffers from the same flaw identified in *Schink*, namely, it fails to explain how Plaintiff can perform his old job despite his mental limitations. The Court disagrees. Unlike the ALJ in *Schink*, the ALJ here included extensive discussion of both physical and mental impairments in the RFC discussion, including the following:

> The State agency psychological consultant's opinion that [Plaintiff] has no severe mental impairments or limitations at the initial level is persuasive because the record that documents normal objective clinical findings on examination supports his opinion.
>
> The State agency psychological consultant's opinion that [Plaintiff] has severe mental impairments of anxiety and depressive disorders with mild to moderate limitations ... is unpersuasive because it is inconsistent with the normal objective clinical findings documented on examination.

10

> The undersigned finds psychological consultant's opinion at the initial level more persuasive than at the reconsideration level as the evidence fails to support the psychological consultant's opinion at the reconsideration level. Specifically, while [Plaintiff] reported a fair degree of difficulty concentrating, his attention span and concentration were frequently described as normal (i.e. "attention/concentration good"). A consultant examination also found no evidence of concentration difficulties during a cognitive assessment (i.e. "concentration: adequate"). [Plaintiff] also enjoys performing concentration related activities, including reading, watching television, playing computer games, and collecting baseball cards, all of which would require a level of cognitive functioning to perform.
>
> …
>
> [Plaintiff] [also had] reported abilities and activities of daily living (i.e. ability to cook, drive, go for a walk to exercise, use a computer, and tend to his personal care needs independently) with appropriate medication management discussed in detail above.

(R. 27-28) (cleaned up). Based on this evidence, the ALJ concluded:

> Therefore, in comparing [Plaintiff's] [RFC] with the physical and mental demands of [the past relevant work], the undersigned finds that [Plaintiff] is able to perform the job as a Middle School Teacher as generally performed.

(R. 29).

In sum, unlike *Schink*, where the ALJ included "no real discussion of how the mental condition affected Schink's RFC," the ALJ here included detailed discussion of mental issues. *Id.* at 1269. The Court therefore finds *Schink* distinguishable, and the Court finds no procedural error based on the manner in which the ALJ analyzed this case or wrote the decision.

                    **(ii)    Substantive Error**

Plaintiff next challenges the substance of the ALJ's decision, arguing the record evidence fails to support the conclusion that Plaintiff can still perform his old job as generally performed. Plaintiff points out that, at step two of the sequential evaluation, the ALJ found that Plaintiff had "mild" limitations in the four broad areas of mental functioning (DE 18 at 13). Given this finding, Plaintiff argues, the ALJ's decision regarding past relevant work cannot stand. As set forth below, the Court disagrees.

11

To begin, Plaintiff's argument confuses the inquiries made at steps two and four of the sequential evaluation. Where a claimant has a "colorable claim of mental impairment," the ALJ must complete the Psychiatric Review Technique Form, often referred to as the "PRTF" or the "special technique." *See Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005). In completing the PRTF, the ALJ must evaluate how a claimant's mental impairment impacts four broad functional areas (sometimes referred to as the "paragraph B criteria"): (1) the ability to understand, remember, or apply information; (2) the ability to interact with others; (3) the ability to concentrate, persist, or maintain pace; (4) and the ability to adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). The ALJ must rate the degree of limitation in each of these areas as either "none," "mild," "moderate," "marked," or "extreme." 20 C.F.R. § 404.1520a(c)(4). If the ALJ finds the degree of limitation in each of these functional areas to be "none" or "mild," the ALJ will generally conclude the mental impairment is not severe and causes no more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1).

The ALJ uses the PRFT and the paragraph B criteria to rate the severity of mental impairments at step two of the sequential process. *See* 20 C.F.R. § 404.1520a. These factors do not necessarily dictate the outcome of the RFC, however, as the RFC determination "requires a more detailed assessment." *Schink*, 935 F.3d at 1269. ALJs are not obligated to include mental limitations in the RFC merely because they have found "mild" limitations under the PRFT and paragraph B criteria. *See Chestang v. Comm'r of Soc. Sec.*, No. 8:21-CV-482, 2022 WL 4354849, at *8 (M.D. Fla. Sept. 20, 2022) (collecting cases); *Mendez v. Saul*, No. 7:19-CV-291, 2021 WL 1217376, at *11 (S.D. Tex. Jan. 6, 2021) (noting that paragraph B findings need not be incorporated into the RFC and that claimant's argument to the contrary "misconstrues the relationship between the ALJ's step [two and] three findings and the RFC determination").

In this case, at step two of the sequential process, the ALJ found Plaintiff's mental impairment of major depressive disorder to be nonsevere (R. 14).  In reaching this decision, the ALJ applied the PRFT and found that Plaintiff had "mild" limitations in all four areas of mental functioning under the paragraph B criteria (R. 15-18).  Because Plaintiff's mental impairment caused no more than "mild" limitations in any of the paragraph B functional areas, and because the evidence did not otherwise indicate more than a minimal limitation in Plaintiff's ability to do basic work activities, the ALJ concluded that Plaintiff's mental impairment was "nonsevere" (R. 18).  The ALJ's written decision expressly noted, however, that the paragraph B findings did not equate to a mental limitation for purposes of the RFC, stating:

> The limitations identified in the "paragraph B" criteria *are not a [RFC] assessment* but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment.

(R. 18) (emphasis added).

In short, the ALJ's paragraph B findings at step two did not mandate that she incorporate mental limitations into the RFC.  *See, e.g.*, *Bryant v. Comm'r of Soc. Sec.*, No. 2:20-cv-294, 2021 WL 4067464, at *11 (M.D. Fla. July 29, 2021) ("[T]he ALJ found mild limitations in all four functional areas [but] did not err in failing to include [mental] limitations in the RFC related to [plaintiff's] depression, anxiety, bipolar disorder, or insomnia."), *R. & R. adopted*, 2021 WL 3855941 (M.D. Fla. Aug. 30, 2021).  The key issue here is not whether the ALJ had to incorporate the step two findings into the RFC, but whether the RFC finding itself was supported by substantial evidence, based on proper legal standards applicable to the RFC.  As set forth below, the Court finds no error on that front.

The RFC represents the most a claimant can still do despite his or her limitations.  *See* 20 C.F.R. § 404.1545(a)(1).  In making the RFC determination, the ALJ must consider all the record

evidence, including evidence of severe and nonsevere impairments. *See Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 842 (11th Cir. 2014) ("[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling."); *see also* S.S.R. 96-8P, 1996 WL 374184, at *5 (July 2, 1996) (stating that an ALJ must consider all limitations and restrictions imposed by an individual's impairments, even those that are not severe, and the RFC must be based on, among other things, medical history and findings, reports of daily activities, lay evidence, and recorded observations).

Here, the ALJ received conflicting evidence regarding the degree to which Plaintiff's nonsevere mental impairments affected his ability to work. The following evidence, however, provided substantial support for the ALJ's decision to exclude mental limitations from the RFC:

- [Plaintiff] reported in his Disability Report that when he was allowed to teach remotely, he was able to do it because it allowed him the flexibility to deal with the disease... which is inconsistent with [Plaintiff's] allegations of an inability to work" (R. 28).

- The record repeatedly showed "normal objective clinical findings documented on examination" (R. 27, with citations to examination reports).

- During examinations, Plaintiff's attention span and concentration were frequently described as normal (i.e. "attention/concentration good") (R. 27). For example, during examinations on April 12, 2019, Plaintiff's concentration was described as "normal" (R. 745) and on October 10, 2017, it was described as "good" (R. 941).

- Plaintiff reported enjoying "concentration related activities," including reading, watching television, playing computer games, and collecting baseball cards, all of which would require a level of cognitive functioning to perform (R. 27).

- During an October 30, 2020 examination, the doctor noted Plaintiff was "fully alert and oriented in all spheres," had immediate, gross, and remote memory intact, had a high average to superior range of knowledge, an average range of arithmetical reasoning skills, and average range of abstract thinking skills (R. 1280). The doctor further noted Plaintiff's insight, judgment, self-management, social functioning, concentration, and task persistence were all intact with "no evidence of impairment" (R. 1280-81).

To be sure, Plaintiff has pointed the Court to a variety of record evidence that the ALJ might have used to reach a different conclusion as to the RFC. On review, however, this Court cannot reweigh conflicting evidence or substitute its judgment for that of the ALJ. *Mitchell v. Comm'r Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014). The mere fact that some of the evidence conflicted with the ALJ's conclusion does not serve as a basis for remand. *See Moore*, 405 F.3d at 1213 ("To the extent that [plaintiff] points to other evidence which would undermine the ALJ's RFC determination, [plaintiff's] contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from re-weighing the evidence or substituting our judgment for that of the Commissioner even if the evidence preponderates against the decision.") (cleaned up). The Court therefore finds no error in the ALJ's conclusion that Plaintiff's RFC allowed him to perform his past relevant work as generally performed.

### C. Medical Opinion Evidence

Finally, Plaintiff argues the ALJ erred in evaluating medical opinion evidence. Under the relevant regulations, ALJs must articulate how persuasive they find medical opinions to be, and ALJs must consider medical opinions using the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. *See* 20 C.F.R. §§ 416.920c(c)(1-5); 404.1520c(b)(2). The "most important" of these factors are "consistency" and "supportability." 20 C.F.R. §§ 416.920c(c)(1-5); 404.1520c(b)(2). As to these two factors, the regulations provide that the ALJ "will explain" how he or she considered these factors. 20 C.F.R. §§ 416.920c(c)(1-5); 404.1520c(b)(2).

Plaintiff argues the ALJ violated these regulations and reached unsupported conclusions as to (1) Dr. Gary Philip Laux, D.O., and (2) Nurse John C. Profera, APRN (DE 18 at 19). The Court will address each in turn.

### 1. Dr. Laux

Dr. Laux submitted an affidavit that opined, inter alia, that Plaintiff suffers from chronic pain in his feet and left hand and that Plaintiff cannot work any kind of job (R. 26, 1351-53). The ALJ found Dr. Laux's opinions "unpersuasive," based on, inter alia, their inconsistency with other record evidence (R. 26). Plaintiff argues the case must be reversed because the ALJ's written decision failed to explain the "supportability" factor as required by the relevant regulations. Plaintiff correctly points out that the ALJ failed to use the words "support" or "supportability" in her written findings regarding Dr. Laux (DE 18 at 19).

The Court finds no error. As stated, the regulations required the ALJ to explain both "consistency" and "supportability." *See* 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). The "supportability" factor focuses on a comparison to the medical source's *own* records, while the "consistency" factor focuses on a comparison to *other* medical and non-medical sources. *See* 20 C.F.R. §§ 404.1520c(c)(1) & 416.920c(c)(1) (explaining supportability); 20 C.F.R. §§ 404.1520c(c)(2) & 416.920c(c)(2) (explaining consistency); *see also Cook v. Comm'r Soc. Sec.*, No. 6:20-cv-1197, 2021 WL 1565832, at *3 (M.D. Fla. April 6, 2021) (discussing the differences between "supportability" and "consistency").

Given these regulatory definitions, the Court finds the ALJ's written decision adequately explained the supportability factor, even though it did not use the words "support" or "supportability." In particular, the ALJ cited to four record examples to explain why she found Dr. Laux's opinions unpersuasive, and three of the examples came from Dr. Laux's own records (R. 875, 1315, 1588). Given that "supportability" focuses on a comparison to a medical source's own records, the Court finds the ALJ adequately – and in substance – explained this factor. To the extent Plaintiff raises other challenges to the ALJ's conclusions regarding Dr. Laux, the Court likewise rejects those challenges.

### 2. Nurse Profera

Nurse Profera supplied two sets of documents in the record. The first, Exhibit 16F, consisted of a "Medical Source Mental Status Report" that opined, among other things, that Plaintiff's concentration and recent memory were poor and that Plaintiff was "unable to work due to debilitating depression and anxiety" (R. 1345). The second, Exhibit 28F, consisted of a collection of treatment notes spanning from February 25, 2021 to April 7, 2022 (R. 1570-83). Each treatment note reflected that Plaintiff had a Global Assessment of Functioning ("GAF") score of 55-60, which indicated "moderate psychiatric symptoms and functional limitations" (R. 25).

The ALJ's written decision addressed Nurse Profera, but only discussed his single opinion regarding Plaintiff's GAF score, finding it "unpersuasive":

> The undersigned finds Nurse Profera's opinion that [Plaintiff] had a GAF rating of 55-60 (Ex. 16F, 28F) unpersuasive because it is internally inconsistent with the normal objective clinical examination findings contemporaneously documented by Nurse Profera during that period of treatment. (Ex. 16F, 28F).

(R. 25). Confusingly, the above discussion included two cites to Exhibit 16F, even though Exhibit 16F had nothing to do with Plaintiff's GAF score. Meanwhile, the ALJ failed to address any of the opinions actually set forth in Exhibits 16F.

Plaintiff seizes upon this confusion to argue the case should be reversed based on improper consideration of Nurse Profera's medical opinions, including the ALJ's failure to assign a persuasive value to opinions set forth in Exhibit 16F (DE 18 at 20). In response, the Commissioner argues that Exhibit 16F did not meet the definition of "medical opinion" within the meaning of 20 C.F.R. §§ 404.1513(a)(2), so the ALJ had no obligation to evaluate it at any rate (DE 19 at 17-18).

The Court finds it unnecessary to decide whether Exhibit 16F qualified as a "medical opinion." Even if it met the definition, the Court finds the ALJ's failure to assign a persuasive value to Exhibit 16F, pursuant to 20 C.F.R. §§ 416.920c(b), was harmless error. When an ALJ's

17

failure to discuss the persuasive value of a medical opinion "[does] not affect [the ALJ's] ultimate findings, the error is harmless, and the ALJ's decision will stand." *Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975, 975 (11th Cir. 2014); *see also Shelton v. Kijakazi*, No. CV 121-154, 2022 WL 3334454, *5 (S.D. Ga. July 22, 2022) ("However, the Court need not further examine whether this unsigned, undated questionnaire constitutes a medical opinion per § 404.1513(a)(2), because any failure to properly evaluate the persuasiveness of the questionnaire was harmless."); *Natasha C. v. Comm'r of Soc. Sec.*, No. 6:21-cv-1237, 2022 WL 17978835, at *5 (N.D.N.Y. Dec. 28, 2022), *R. & R. adopted*, 2023 WL 356203 (N.D.N.Y. Jan. 23, 2023) ("Nevertheless, the Court finds it unnecessary to conclusively determine whether the ALJ was required to evaluate the persuasiveness of this opinion, because any such error would be harmless on this record.").

In reaching this finding, the Court notes that the ALJ evaluated the persuasiveness of the GAF-related opinion set forth in Exhibit 28F, and that the ALJ had no obligation to articulate the persuasive value of evaluate every opinion offered by every source. *See* 20 C.F.R. §§ 416.920c(b) (requiring only source-level articulation and noting "[w]e are not required to articulate how we considered each medical opinion … from one medical source individually."). Moreover, as to the non-GAF opinions set forth in Exhibit 16F, the ALJ evaluated the persuasiveness of similar opinions from other sources, including the state agency psychological consultant's opinion that Plaintiff had moderate limitations in the ability to concentrate and manage himself, which the ALJ found unpersuasive (R. 27), and Dr. Laux's opinion that Plaintiff could not work any type of job, which the ALJ also found unpersuasive (R. 26).

For all of these reasons, the Court finds the ALJ's failure to articulate the persuasiveness of Exhibit 16F did not affect the ultimate outcome of the case. To the extent the ALJ committed error, the Court finds such error to be harmless. *See Tillman*, 559 F. App'x at 975 (noting that error is harmless where it does not affect the ALJ's ultimate findings).

### IV. RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

For the reasons stated above, it is **RECOMMENDED** that:

1. The Commissioner's final decision be **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (DE 18) be **DENIED**;

3. The Commissioner's Motion for Summary Judgment (DE 19) be **GRANTED**;

4. Final judgment be entered in the Commissioner's favor.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 5th day of September 2023.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE